UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| BRANDY SMITH-LARSEN,<br><br>                    Plaintiff,<br><br>         v.<br><br>JO ANNE B. BARNHART, Commissioner of<br>Social Security,<br><br>                    Defendant. | CASE NO.    C04-5851RBL<br><br>REPORT AND<br>RECOMMENDATION<br><br>Noted for January 6, 2006 |

This matter has been referred to Magistrate Judge J. Kelley Arnold pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Magistrates Rule MJR 4(a)(4) and as authorized by Mathews, secretary of H.E.W. v. Weber, 423 U.S. 261 (1976).  This matter has been fully briefed and is ready for the Court's review. The undersigned submits the following report and recommends that the Court remand the matter for further consideration by the administration.

## PROCEDURAL AND FACTUAL BACKGROUND

At the time of the administration's final decision, Plaintiff, Brandy Smith.-Larsen, was 23 years of age. Ms. Smith-Larsen was educated through the 10th grade, attending special education classes. She has no relevant past work experience.

Plaintiff testified that she had worked as a babysitter for four months for a friend. Plaintiff stated that she had never possessed a driver's license because she could not pass the examination, not being able to read road signs. Plaintiff reported that she had also worked as a hostess at a bowling alley for a month and a half, but had not been fast enough to do the job.

Plaintiff indicated that she would get nervous when she was around too many people, that she

never went out by herself, and that she also did not go out with friends. Plaintiff testified that she tried to do some reading but that reading children's books to her four-year-old niece was hard for her. Plaintiff stated that she had been given romance novels to read but that she could not get very much out of the books. Plaintiff indicated that she needed help filling out her Social Security application forms because she was only able to understand bits and pieces.

Plaintiff reported that she would wake up in the middle of the night and feel like someone was staring at her through her window. Plaintiff acknowledged having memory problems such that if someone told her what to do, fifteen or twenty minutes later it would not be done. Plaintiff admitted requiring constant reminding of what she needed to do.

Plaintiff testified that it was difficult for her to go to the grocery store because there were a lot of people there. Plaintiff stated that sometimes she would hear voices calling her name or saying things about her. Plaintiff indicated that she thought she was depressed some of the time but not all of the time. Plaintiff testified that she had been in special education from fourth grade on and had gone to a skills center while in school to learn cooking but had a hard time learning to cook.

Plaintiff stated that in order to fill out an application, she needed someone to sit there and help her fill it out. Plaintiff indicated that she was in counseling because she had been molested by her real father. Plaintiff acknowledged that she should not dwell on the molestation but needed to get over it.

Plaintiff filed an application for SSI benefits on July 28, 1998, alleging disability due to vision, back, and learning impairments. Plaintiff's application was denied initially, on reconsideration, and again on September 20, 2001, following a hearing before Administrative Law Judge Lee Dethloff, Plaintiff filed a timely appeal to the Appeals Council, which on October 20, 2004, declined review, leaving the ALJ's decision as the final decision of the Commissioner. Plaintiff filed a timely Complaint in Federal District Court.

Plaintiff filed the instant matter on or about December 13, 2004. Plaintiff argues the ALJ failed to properly consider the medical evidence, the ALJ improperly assess the credibility of plaintiff and statements made by a lay witness, and consequently the ALJ failed to properly assess Plaintiffs "residual functional capacity" and finding that Plaintiff was capable of working as a housekeeper, assembler, or agricultural sorter.

1

2 **<u>DISCUSSION</u>**

The Court must uphold the Secretary's decision if the ALJ applied the proper legal standard and

3 there is substantial evidence in the record as a whole to support the decision. <u>Drouin v. Sullivan</u>, 966 F.2d

4 1255, 1257 (9th Cir. 1992); <u>Hoffman v. Heckler</u>, 785 F.2d 1423, 1425 (9th Cir. 1 986). Substantial

5 evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

6 <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971); <u>Fife v. Heckler</u>, 767 F.2d 1427, 1429 (9th Cir. 1985). It

7 is more than a scintilla but less than a preponderance. <u>Sorenson v. Weinberger</u>, 514 F.2d 1112, 1119 n.10

8 (9th Cir. 1975); <u>Can v. Sullivan</u>, 772 F. Supp. 522, 525 (E.D. Wash. 1991). If the evidence admits of more

9 than one rational interpretation, the Court must uphold the Secretary's decision. <u>Allen v. Heckler</u>, 749 F.2d

10 577, 579 (9th Cir. 1984).

11 ***THE ALJ FAILED TO PROPERLY EVALUATE THE MEDICAL EVIDENCE***

12 If the ALJ cannot determine whether a claimant is disabled based on a claimant's current work

13 activity or on medical facts alone, and a claimant has a severe impairment(s), a review is made of the

14 claimant's residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(e). The ALJ is entitled to resolve

15 conflicts in the medical evidence. <u>Sprague v. Bowen</u>, 812 F.2d 1226, 1230 (9th Cir. 1987). He may not,

16 however, substitute his own opinion for that of qualified medical experts. <u>Walden v. Schweiker</u>, 672 F.2d

17 835, 839 (1 1th Cir. 1982). If a treating doctor's opinion is contradicted by another doctor, the

18 Commissioner may not reject this opinion without providing "specific and legitimate reasons" supported by

19 substantial evidence in the record for doing so. <u>Murray v. Heckler</u>, 722 F.2d 499, 502 (9th Cir. 1983).

20 "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the

21 rejection of the opinion of either an examining physician or a treating physician." <u>Lester v. Chater</u>, 81 F.3d

22 821,831 (9thCir. 1996).

23 In this case, Dr. Neims concluded that Plaintiff was chronically mentally ill on February 3, 1999

24 (Ex. 22F, p. 4: Tr. 383), and that Plaintiff was unable to "engage in sustained gainful employment without

25 considerable structured aid" (Ex. 29F, p. 9: Tr. 449). Both Dr. Mazer and Dr. Neims opined that Plaintiff

26 had several "moderate" and "marked" functional limitations. Rather than accept these two opinions, the

27 ALJ rejected them and chose to rely on the opinion and testimony of Dr. Gustavson to support his

28 conclusions.

The ALJ erred in rejection of Dr. Neims and Dr. Mazer and in his reliance on Dr. Gustavson. As explained by Plaintiff:

ALJ Dethloff at p. 8 of his decision (Tr. 35) rejected and gave "no weight" to Dr. Mazer's findings because "the limitations she ascribe[d were] not supported by detailed findings". The Commissioner in Defendant's Brief, pp. 6-7, reiterated ALJ Dethloffs statement, arguing that it was a legally sufficient reason for giving no weight to Dr. Mazer's findings. However, both ALJ Dethloff and the Commissioner ignored/overlooked that Dr. Mazer's opined limitations were based upon objective psychological testing as well as a clinical interview, and that Dr. Mazer's findings were consistent with Plaintiffs history of losing jobs after a short time and her history of childhood abuse.

ALJ Dethloff at p. 8 of his decision (Tr. 35) additionally indicated that Dr. Mazer had noted that Plaintiff might be able to work after treatment for the residuals of her childhood sexual abuse. However, ALJ Dethloff ignored/overlooked that Dr. Mazer mentioned this in the context of working in a sheltered workshop (Ex. 24F, p. 4: Tm. 289), which was similar to Dr. Neims' opinion regarding sheltered work (Ex. 29F. p. 9; Tr. 450). Both ALJ Dethloff and the Commissioner in Defendant's Brief, p. 6, erred by indicating that the fact that Dr. Mazer opined that Plaintiff might be able to work in a sheltered workshop setting after treatment for childhood sexual abuse was a "legitimate" reason to discount Dr. Mazer's opinions regarding Plaintiffs current ability to function. The record was devoid of any evidence as to how tong treatment would be needed before Plaintiff would he able to transition to Competitive employment via a sheltered workshop setting. Contrary to the Commissioner's argument in Defendant's Brief, pp. 6-7, ALJ Dethloff erred by failing to provide a "legitimate" reason for rejecting Dr. Mazer's findings.

In addition, ALJ Dethloff at p. 4 of his decision (Tr. 31) based his rejection of Dr. Neims' findings and opinions mainly on one sentence in Dr. Neims' 2001 report, ALJ Dethloff stating that he specifically rejected the "somewhat general conclusions regarding [Plaintiffs] capacity to work reached by Dr. Dan Neims in Exhibit 29F". ALJ Dethloff erred by failing to give any reason why he sub silentio rejected Dr. Neims findings and opinions in his 1998 report (Ex. 2lF; Tr. 376-79) and his 1999 report (Ex. 22F; Tr, 380-83). The Commissioner did not comment on this error in Defendant's Brief The Commissioner also did not comment on ALJ Dethloffs error in ignoring/overlooking the objective test results set forth by Dr. Neims in his 2001 evaluation, summarized in Plaintiffs Opening Brief, pp.10-1 1.

ALJ Dethloff at p. 9 of his decision (Tm. 36) rejected the sentence in Dr. Neims' 2001 report regarding Plaintiffs inability to work by alleging that Dr. Neims opinion was "speculative, conclusory and include[d] physical issues and vocational issues outside of his expertise". ALJ Dethloff at p. 9 of his decision (Tm. 36) alleged that Dr. Neims' 2001 opinion was inconsistent with his report in 1998 despite being allegedly "predicated on information substantially identical". However, in 1998 Dr. Neims opined a constellation of "moderate" limitations (Ex. 21 F, p. 9; Tm. 378), which the VE testified precluded the jobs he had identified (Tm. 78). When Dr. Neims saw Plaintiff almost a year later in 1999 Dr. Neims opined the same "moderate" limitations and found that Plaintiff was chronically mentally ill (Ex. 22F, pp. 3-4; Tm. 382-83). Dr. Neims rated Plaintiffs GAF score at 50 in 2001, the same as he had rated it in 1998 (Ex. 21F, p. 6; Tm. 375). This was consistent with the inability to maintain a job, as indicated in Ex. "A" attached to Plaintiffs Opening Brief.

Therefore, contrary to ALJ Dethloffs analysis accepted by the Commissioner in Defendant's Brief, pp. 5-6, all three reports by Dr. Neims were internally consistent with each other, including the functional limitations and the OAF scores, If ALJ Dethloff wished to reject Dr. Neims' opinion in the one sentence he devoted to one of Dr. Neims' three reports

because t concerned a "vocational" opinion, this would also be true of Dr. Bloomgarden's opinion (ex. 1SF, p.5; Tr. 338) which ALJ Dethloff did not reject. In summary, ALJ Dethloff erred by offering no reason, let alone a "legitimate" reason, for rejecting the multiple "moderate and one "marked" functional limitations opined by Dr. Neims in 1998 (Ex. 21F, p. 9; Tr. 378) and in 1999 (Ex. 22F, p. 3; Tr. 382), the Commissioner not contesting this issue.

Plaintiffs Reply Brief at 3-5. The court finds Plaintiffs arguments persuasive. Moreover, as pointed out by Plaintiff, the ALJ erred when he relied on Dr. Gustavson's opinion to reject the opinions of Dr. Neims and Dr. Mazer. Specifically, on August 18, 2001, Dr. Gustavson testified that the basis for his disagreement with the 'moderate" and 'marked" functional limitations by Dr. Neims and Dr. Mazer was based upon Plaintiffs testimony, which sounded to him like Plaintiff was "doing better now than she has in the past" (Tr. 72). The functional limitations identified by Dr. Gustavson and relied upon by ALJ Dethloff therefore, only applied to the time period of the hearing and not during the time period during which Dr. Mazer or Dr. Neims evaluated Plaintiff up through February 27, 2001.

Having found that the ALJ erred in his evaluation of the medical evidence, it is necessary to remand the matter with the direction for the administration to reconsider matter in its entirety, as the proper medical evidence evaluation is necessary to fairly evaluated the credibility of Plaintiff and the lay witness, as well as , the decisions to be made at steps three, four and five of the administrative process.

## CONCLUSION

Based on the foregoing discussion, the Court should remand matter to the administration for reconsideration by a different Administrative Law Judge.  Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed.R.Civ.P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal.  Thomas v. Arn, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on **January 6, 2006**, as noted in the caption.

DATED this 8th day of December, 2005.


*/s/ J. Kelley Arnold*
J. Kelley Arnold
U.S. Magistrate Judge